IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-320-BO

| | |
|---|---|
| FOY H. DANIELS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court on the parties' Motions for Judgment on the Pleadings. For the following reasons, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED. The decision below will be REVERSED, with benefits awarded to Plaintiff.

## BACKGROUND

Plaintiff applied for benefits on May 19, 2003, alleging an onset date of July 16, 2001. His application was denied both initially and on reconsideration. Plaintiff then timely sought and received a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ denied benefits in a written decision. The Appeals Council denied review, making the ALJ's decision final for administrative purposes. Plaintiff then filed this lawsuit, and both parties each filed Motions for Judgment on the Pleadings. A hearing on the Motions was held in Edenton, North Carolina, on July 3, 2007.

DISCUSSION

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act is limited to determining whether the findings of the Administrative Law Judge are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Substantial evidence consists of more than a mere scintilla of evidence, but may be less than a preponderance of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must not substitute its judgment for that of the Commissioner if the Commissioner's decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (citations omitted).

In evaluating whether a claimant is disabled, an ALJ uses a multi-step process. First, a claimant must not be able to work in a substantial gainful activity. 20 C.F.R. § 404.1520. Second, a claimant must have a severe impairment, which significantly limits his or her physical or mental ability to do basic work activities. *Id.* Third, to be found disabled, without considering a claimant's age, education, and work experience, a claimant's impairment must be of sufficient duration and must either meet or equal an impairment listed by the regulations. *Id.* Fourth, in the alternative, a claimant may be disabled if his or her impairment prevents the claimant from doing past relevant work. *Id.* Fifth, if a claimant cannot do past relevant work, he or she is disabled if an impairment prevents the claimant from doing other work. *Id.*

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his onset date. At step two the ALJ determined that Plaintiff suffered from severe

2

myofascial pain syndrome, and that this impairment did not equal a listing at step three.[1] At step four, the ALJ determined that Plaintiff possessed the residual functional capacity ("RFC") to perform a wide range of light unskilled work, or a limited range of light unskilled work with manipulative restrictions. The ALJ found that Plaintiff could stand or walk for up to six hours in a workday; lift up to twenty pounds occasionally and ten pounds frequently; engage in frequent handling, reaching, and fingering; and perform only simple routine repetitive tasks in a low production, stable work environment that required only occasional interpersonal contact. Given this RFC, the ALJ concluded that Plaintiff could not perform his past relevant work as an extruder operator.

At step five, the ALJ asked a Vocational Expert ("VE") whether jobs remained in the national economy for a person of Plaintiff's RFC, age, experience, and background. The VE concluded that a person in Plaintiff's position could work as a mail clerk, office cleaner, or third shift gate guard. The ALJ accordingly concluded that Plaintiff was not disabled and denied benefits.

Plaintiff says the ALJ erred in two respects: first, by ALJ improperly discrediting Plaintiff's testimony regarding the severity of his impairments; and second, by failing to incorporate certain limitations into the hypothetical question posed to the VE.

Plaintiff testified as to his myofascial pain syndrome's disabling effects, Tr. 309-15, and the ALJ properly determined that this impairment could reasonably be expected to produce symptoms of the severity and duration described by his testimony. *Craig v. Chater*, 76 F.3d 585,

---

[1] The ALJ expressly found that Plaintiff's hypertension and knee arthritis were not severe impairments.

3

592-93 (4th Cir. 1996). However, the ALJ discredited Plaintiff's subjective allegations for several reasons. The ALJ noted that Plaintiff did not suffer from any of the structural abnormalities or muscular deterioration which ordinarily arise from myofascial pain syndrome. Tr. 23. Plaintiff had also not seriously attempted to manage his symptoms, such as by receiving steroid injections, using a TENS unit, or enrolling in a pain management program. *Id.*

The ALJ further relied upon the conclusions of two physicians, both of whom believed that Plaintiff could engage in light-level work. *Id.* at 23. Plaintiff's treating doctor, Dr. Newell ("Newell") had referred Plaintiff to Dr. Poole ("Poole"), a neurologist, in 2001. Responding to an inquiry from Plaintiff's attorney, Poole wrote that he would restrict Plaintiff to "light duty, avoiding any repetitive movements, heavy lifting (i.e., over 20 lbs) or any type of overly strenuous activity in general. Aside from these restrictions, he shouldn't have any problems working." *Id.* at 144. Poole largely held to this view until the conclusion of his treatment relationship with Plaintiff in 2002. Dr. Younger ("Younger"), a consulting physician, likewise concurred with Poole in 2003, concluding that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and further that Plaintiff had no postural or manipulative restrictions. *Id.* at 215-18.

In October of 2005, Newell filled out an Estimated Functional Abilities Form for Plaintiff. Newell's responses (mostly checks in boxes and a few handwritten remarks) indicated that Plaintiff could not perform work at any level. *Id.* at 84-87. As the opinion of Plaintiff's treating doctor, this document was presumptively entitled to greater weight in the ALJ's analysis. 20 C.F.R. § 404.1527. The ALJ nevertheless properly discounted the Form, as both conclusory and generally contradicted by Newell's prior findings. Tr. 23. In 1999, Newell had thought

Plaintiff's condition would not interfere with his bowling, and that exercise might actually improve it. *Id.* at 190. A year later Newell noted that Plaintiff's application for disability would not likely succeed, as Plaintiff could still perform light work. *Id.* at 165. And in 2003, Newell was not sure that Plaintiff could legally qualify for disability, and observed that Plaintiff often exercised by walking. *Id.* at 260, 253.

Plaintiff now challenges the ALJ's credibility finding in view of medical evidence, which he says the ALJ either overlooked or discounted improperly. Plaintiff received pain injections at least six times from 2000 to 2004, including three injections each of Marcaine and Aristocort and one injection of cortisone. *Id.* at 133, 155, 180, 185, 254, 284. As for his physical deterioration, a neurologist concluded that, though he had no acute problems, Plaintiff had "visible muscle spasm over the region of the left scapula and into the left cervical paraspinal muscles." *Id.* at 155. Lastly, Plaintiff's treating doctor referred him to a pain management specialist in 2002. *Id.* at 132. Plaintiff was seen by the pain doctor only once, apparently. However, like Plaintiff's other physicians, the pain doctor believed Plaintiff suffered from myofascial pain syndrome, could benefit from botox therapy, and had been resistant to treatment. *Id.* This evidence directly contradicts the ALJ's assertions about Plaintiff's limited symptoms and modest treatment regimen.

Recent evidence also casts doubt on the ALJ's credibility finding. As discussed above, the ALJ discounted Newell's entries in the Estimated Functional Abilities Form as conclusory and inconsistent with his prior opinions. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). Thus, in order to assess the correspondence between the medical evidence and Plaintiff's testimony, the ALJ relied upon two earlier, more permissive

5

opinions by Younger and Poole. Because these doctors thought Plaintiff could do work at the light level, the ALJ found Plaintiff less then credible. Yet after the hearing, Plaintiff submitted two letters from Newell, dated March 29, 2006 and April 13, 2006, respectively. These were properly incorporated into the record by the Appeals Council, and must be considered in evaluating whether substantial evidence supports the decision below. *Wilkins v. Sec'y, Dep't of Health and Human Svs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Like the Estimated Functional Abilities Form, Newell's two letters say that Plaintiff cannot do any work. Tr. 292-99. The second letter specifically claims that Plaintiff cannot even perform work at the sedentary level. *Id.* at 293. Yet unlike the boilerplate 2005 Form, Newell's letters detail the reasons for his increasingly stringent view of Plaintiff's work capacity. *Id.* at 292-94. According to Newell, neuropathy has reduced Plaintiff's right arm use; at the same time, use of the left arm triggers Plaintiff's myofascial pain. *Id.* at 293. Newell also says that Plaintiff's physical capability has declined considerably from what it was in the past; that his pain has progressed, despite multiple treatment regimens; and that his impairments require narcotic pain medication and injections. *Id.*

On their face, the letters show that Plaintiff's impairments deteriorated over time, and eventually became so severe as to prevent him from working. More importantly, they account for the seeming contradiction between Newell's initial diagnosis, and the bleak conclusions he ultimately expressed in the October 30, 2005 Estimated Functional Abilities Form. Because persuasive evidence supports (rather than contradicts) it, the conclusion expressed in the Form represents weighty, objective proof of Plaintiff's actual work capacity. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d).

Critically, the VE testified that if Plaintiff's testimony were to be believed, then no jobs would be available to him in the national economy. Tr. 332. As discussed above, the objective medical evidence – principally the October 30, 2005 opinion of his treating physician – corroborates Plaintiff's testimony about his the disabling nature of his impairments. Plaintiff was therefore disabled under the law from October 30, 2005 onward.

## CONCLUSION

Plaintiff's Motion is GRANTED, and Defendant's Motion is DENIED. The decision below is REVERSED, with benefits awarded to Plaintiff as of October 30, 2005.

SO ORDERED.

This 17 day of August, 2007.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE